Walter R. Stutz v. Commissioner.
Stutz v. Commissioner
Docket Nos. 23464, 27985.
United States Tax Court
1951 Tax Ct. Memo LEXIS 220; 10 T.C.M. (CCH) 506; T.C.M. (RIA) 51152; May 25, 1951
*220 Family partnerships: Assessment and collection of tax: Burden of proof. - The Commissioner failed to meet his burden of proof that the taxpayer had omitted from gross income an amount in excess of 25% of the gross income stated in the return, where a bona fide partnership was established. J. E. Simpson, Esq., 842 Title Insurance Building, 433 South Spring Street, Los Angeles 13, Calif., for the petitioner. H. A. Melville, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in income and victory taxes of $42,259.83 for 1943 and a deficiency in income tax of $106,100.52 for 1944. The only issue which will be decided is whether the general rule of section 275 (a) prevents assessment *221 after three years or whether, under section 275 (c), the taxes may be assessed within five years because the taxpayer omitted from gross income for each year an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return. That issue, in turn, depends upon whether the petitioner should have reported all of the income of three restaurants and bars for each year or whether his two brothers and two sisters were partners in the operation of those places so that their distributive shares of the net income of the partnership for a part of 1943 and all of 1944 were not taxable income to the petitioner. Findings of Fact The petitioner, Walter R. Stutz, was married on August 30, 1943, and after that date he resided with his wife in San Diego, California. The petitioner filed separate returns for 1943 and 1944 with the collector of internal revenue for the sixth district of California. The return for 1943 was filed on March 15, 1944, and the return for 1944 was filed on March 15, 1945. The petitioner never consented to any extension of the time within which assessment or collection of taxes for 1943 or 1944 could be made. *222 He reported on his return for 1943 "total income" of $51,874.22, consisting of a long-term capital gain of $10,752.60, rents of $25.17, net profit from business for the first three months of 1943 of $15,817.55, computed by deducting expenses of $52,524.17 from gross profits of $68,341.72, and partnership income of $25,278.90, after showing $3,000 additional returnable by his wife. He reported on his return for 1944 "adjusted gross income" of $46,214.17, consisting of "salary" of $9,000 from Stutz Enterprises, Ltd., a net loss of $380.21 from the sale of capital assets, and partnership income of $22,095.35 from Walter R. Stutz Enterprises, Ltd., and $15,499.03 from Pacific Square, Ltd. "Salary" of $9,000 from Stutz Enterprises, Ltd., was shown as returnable by his wife. The notice of deficiency for 1943 was mailed on March 8, 1949. The notice of deficiency for 1944 was mailed on February 6, 1950. The petitioner had two brothers, Louis and Samuel, and three sisters, Bernice, Lillian, and Florence. Their father died in 1915, after which all of the brothers and sisters, with the exception of Florence, actively associated with each other in various entertainment enterprises to which *223 they contributed time and money. Money earned from those enterprises was used for living expenses of the group. No books or records were maintained which show the time or money contributed or the money or benefits derived by any one of the five. There was a loose, general understanding among the five that if anyone needed help in any business venture the others would try to supply it, and, if success came to any one or more, it would be shared in some way with the others. None of their ventures was particularly successful until the ones here in question. The petitioner, in December 1940, leased premises in which he constructed the Pacific Club at a cost of about $3,500. He financed the venture partly with money previously earned by him in family ventures, partly by funds given to him by Samuel, and partly by a loan. Samuel and Louis assisted in the construction and supervision, and Lillian did some of the decorating of the club. The petitioner and his two brothers constructed a night club called the Pirate's Cave in 1942 on premises leased by the petitioner. Louis, Samuel, and Lillian participated to some extent in the opening and in the operation of the club. The petitioner, upon *224 information furnished him by Louis, leased premises known as the Cuckoo Club. These places were combination coffee shops, restaurants, and cocktail lounges. The petitioner, his two brothers, and his two sisters agreed, in the latter part of 1942 or early in 1943, that all were entitled to share in the success of the clubs which the petitioner was operating and their arrangement should be reduced to writing because the petitioner was planning to marry and because there should be some written agreement to protect the interests of all. They agreed orally at that time that the petitioner should be responsible for the management of the clubs and the others would purchase interests in the clubs from him to make up for the fact that he had contributed to these ventures more services and more money than the others. An accountant advised the petitioner to form a partnership, rather than a corporation, to avoid excess profits taxes. Each of the two brothers and two sisters executed a promissory note on or about April 1, 1943, for $20,000, payable to the petitioner in consideration of his transfer to each of them of a 20 per cent interest in the three clubs. Semi-annual payments were to be *225 made on the notes. The notes bore interest at 6 per cent. No payments were made on the notes during 1943 or 1944. The maker's interest in the three clubs was assigned as collateral security for the note. The book value of the properties was then about $73,000, exclusive of good will. The petitioner on his 1943 return reported a long-term capital gain from the sales to his brothers and sisters. The petitioner, his two brothers, and his two sisters entered into a written agreement dated April 1, 1943, forming a limited partnership under the name of Walter R. Stutz Enterprises. The partners contributed to the partnership their equal shares in the three clubs, subject to the liabilities of the clubs, and the partnership was to carry on the business of the clubs. The petitioner was to be the general partner and manager of the business. The other four were to be limited partners, with no participation in management. The petitioner was to receive a "salary" of $18,000 annually. Profits were to be distributed in amounts and at times to be decided by the petitioner. Profits and losses were to be shared in proportion to the capital owned by each. Losses of a limited partner could not exceed *226 his capital investment. Capital could not be withdrawn. Interests could not be assigned without the consent of the petitioner, and he had an option to meet any offer to purchase an interest. The partnership was to continue for twenty years, unless sooner terminated. Various legal acts were performed by the partners and by the partnership to carry out the partnership agreement in accordance with law and to conduct its business. Louis, Samuel, and Lillian performed some non-vital services for the partnership from time to time during 1943 and 1944, and for some of those services received small salaries. All partners discussed various changes and expansions of the partnership business. The net distributable income of Walter R. Stutz Enterprises, Ltd., for the taxable year April 1, 1943, to December 31, 1943, amounted to $87,394.52, and the adjusted net distributable income of Walter R. Stutz Enterprises, Ltd., for the taxable year 1944 amounted to $133,107.71. The partnership books were poorly kept until they were rewritten early in 1944, but capital and drawing accounts were opened for each partner. The sum of $20,000 was credited originally to each capital account. Each drawing *227 account was credited with $15,222.55 for 1943 and with $22,095.35 for 1944. The limited partners reported $14,778.90 for 1943 and $22,095.35 for 1944 as their shares of partnership income, except that it is not clear what Bernice reported for 1943 and Lillian reported an additional $16.50 for 1944. Withdrawals were charged to their drawing accounts for 1943 and 1944, a large part of which represented taxes paid. The Commissioner, in determining the deficiencies, held that all of the income of the partnership for 1943 and 1944 was taxable to the petitioner. He explained that the two brothers and two sisters were not recognizable as bona-fide partners for income tax purposes. The petitioner, his two brothers, and his two sisters, in good faith and acting with a business purpose, intended to join together as partners in the present conduct of the business under the name of Walter R. Stutz Enterprises and to share its profits and losses in accordance with their agreement dated April 1, 1943. The petitioner did not omit either from his return for 1943 or from his return for 1944 gross income properly includible therein in excess of 25 per centum of the gross income stated in his *228 return for that year. All facts stipulated by the parties and all joint exhibits filed by them are incorporated herein by this reference. Opinion MURDOCK, Judge: The parties are in agreement that the three-year period of limitations provided in section 275 (a) had expired before the notices of deficiencies were mailed but those notices were mailed within five years after the returns were filed. The parties likewise agree that the petitioner did not omit from his gross income for either year an amount properly includible therein which is in excess of 25 per cent of the amount of gross income stated in the return if the so-called limited partners of the partnership of Walter R. Stutz Enterprises were taxable with their distributive shares of the net income of that partnership in accordance with their partnership agreement. Thus, if the five partners in good faith and acting with a business purpose intended to join together as partners in the present conduct of that business, then their shares of the income of that business were not properly includible in the income of the petitioner, the statute of limitations against assessment and collection had expired before the notices of *229 deficiencies were mailed, and none of the other issues in these cases need be decided. The Court, in reaching its conclusion, has considered all of the facts set forth in the record - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it was used, and all other facts throwing light on the true intent of the parties. Cf. . No point would be served in discussing all of the facts, but a brief reference to some may be appropriate. The petitioner, his two brothers, and his two sisters had been a close family group in the conduct of numerous businesses over a long period of years. They had managed to live from their business activities but they had never been very successful. They had always helped one another, and the evidence justifies the conclusion that they had some kind of a vague understanding among them that any future success of one or more would be shared by the others. The three clubs here in question *230 proved to be money-makers, and the petitioner, in accordance with the understanding above mentioned, agreed to allow the others to share in the business with him. The suggestion that there should be a written agreement came from one of the others. The petitioner readily acquiesced. Arrangements were worked out which the parties deemed fair under all of the circumstances, and the four others agreed to pay $20,000 each for a one-fifth interest in the enterprises. They proved to be worth much more. All interests were pooled in the partnership in which the petitioner was the managing general partner and the others were limited partners. An extra share of the earnings was allotted to the petitioner in recognition of the managerial services which he was to perform. The limited partners were not to participate in management, as is usual in the case of such partners. Nevertheless, they took an interest in the business and participated in all discussions relating to changes in or expansion of the business. Their shares of the income of the business were used for their benefits. If there is any doubt as to the existence of any essential element of proof, that doubt would do the Commissioner *231 no good because he has the burden of proof on this issue and can sustain it only if the evidence preponderates in favor of his holding that there was no bona fide partnership. . Decisions will be entered for the petitioner.